Otis Ayer

|   *vs.*

George W. Stewart et al.

C. executed a first mortgage upon certain lands to P., and a second mortgage upon the same to A., and afterwards quitclaimed the same premises to S. The first mortgage was foreclosed by advertisement, and immediately after the foreclosure sale S., as owner of the premises, demanded and received from the Sheriff who made the sale the surplus money bid over and above the amount of the first mortgage and costs of sale. Nearly eight years after the surplus was paid to S., A., the second mortgagee, brought an action against S. for the money so received by him, and to declare and enforce a lien thereon as second mortgagee. *Held*, That the action is in the nature of an action for money had and received, and is barred by lapse of time, upon the principle that the analogy of the law in regard to limitation of actions in such cases should be followed, and in accordance with the doctrine that a court of equity will refuse relief for stale demands where a party has slept upon his rights.

This action was brought in the District Court for Ramsey County by the plaintiff, as holder of a second mortgage, to recover the surplus money paid over to the successor in interest of the mortgagor, upon the foreclosure of the prior mortgage, and to enforce his lien thereon. The cause was tried before a referee, who ordered judgment as demanded in the complaint. The court below set aside the report of the referee, and the plaintiff appeals from the order setting the same aside to this Court. The case is fully stated in the dissenting opinion.

Smith & Gilman for Appellant.

SWAN & BANGS, ATWATER & FLANDRAU for Respondent.

*By the Court*—BERRY, J.—We are unable to conceive how the plaintiff could have any claim against Stewart for the surplus money arising from the foreclosure of the Piper mortgage, unless it be upon the basis that as this surplus, while in the hands of the sheriff, belonged to the plaintiff, a second mortgagee, (upon the ground stated in the dissenting opinion in this case) the law would imply that Stewart took the same upon a trust for the use and benefit of the plaintiff. Assuming that a trust of this nature would be implied, the plaintiff's right to the surplus in the hands of Stewart, and as against Stewart, accrued at the moment when Stewart received the money. By the very act of demanding and receiving the money *as owner* of the mortgaged premises, as he claimed to do, Stewart denied and repudiated the right of the plaintiff to the money, and claimed the same in his own right, and adversely to the plaintiff. Stewart received the surplus March 5th, 1859, and this action was commenced about February 1st, 1867, nearly eight years after the time when the plaintiff's right against Stewart accrued.

Of the foreclosure, the plaintiff was bound to take notice, and there is nothing to show that he was not aware that the surplus was paid over to Stewart immediately after the sale. The plaintiff's cause of action against Stewart is in the nature of an action at law for money had and received, and upon the principle that equity follows the analogy of the law in regard to limitations of actions, and upon the well established doctrine that, even where there is no analogous statutable bar, a court of equity will refuse relief for stale demands where a party has slept upon his rights, we agree with the learned Judge below, that this action should be

held to be barred by lapse of time.   *Angell on Limitations,* *Secs.* 25, 26; *Stafford vs. Richardson,* 15 *Wend.,* 306.

Order affirmed.

McMillan, J., *dissenting.*—I regret that I am unable to concur with my brethren in the disposition they make of this case.   The facts in the case are as follows :

On the 2nd of December, 1857, L. Crosby executed a mortgage upon certain premises to Geo. H. Piper to secure the payment of $137.70 with interest at three per cent. per month, payable in one year after date.

On the 10th of April, 1858, Crosby executed a second mortgage on the same land.   On the 8th of January, 1859, Piper assigned his mortgage to E. R. Smith.   On the 25th of January, 1859, Crosby, the mortgagor, conveyed his interest in the mortgaged premises to the defendant, Geo. W. Stewart.   On the 5th of March, 1859, Smith, as assignee of the Piper mortgage, foreclosed the same by advertisement claiming as due thereon $231.23, and sold the premises to Patten for $514, who for a valuable consideration sold the same and assigned the Sheriff's certificate to the defendant Stewart, and one Swan, and afterwards Swan conveyed his interest to Stewart.   The Sheriff, out of the purchase money paid by Patten, retained the costs (which it was agreed amounted to $25), and paid to Smith the amount due on the Piper mortgage, and thereafter the defendant Stewart as owner of the land demanded the surplus proceeds of sale, which were then paid to him.

In equity a mortgage is a specific lien upon the mortgaged property.   Where there are two mortgages upon the same premises, and the property is converted into money by a sale under the first mortgage, the lien of the second mortgage attaches to any surplus proceeds of the

sale after satisfying the first mortgage.   *Astor vs. Miller*, 2 *Paige, N. Y.* 68;   *Barret vs. Gale and others*, 4 *ib.*, 503; *Varnum vs. Mesene*, 8 *Allen*, 58;   *Buttrick vs. Wentworth and others*, 6 *Allen*, 79.

Unless this rule is changed by our Statute it must apply to this case.   By our statute regulating the foreclosure of mortgages under a power of sale therein by advertisement in force at the time of this sale, it was provided thàt upon the sale of real estate under a mortgage containing a power of sale, any surplus proceeds of sale remaining in the hands of the officer, or other person making the sale, after satisfying the mortgage on which such real estate was sold, and payment of the costs and expenses of such foreclosure and sale, should be paid over by such officer, or other person, on demand, to the mortgagor, his legal representatives, or assigns.   *Comp. Stat.*, (1849–58) *c.* 75, *Sec.* 13, *p* 645.

*Section* 18 is as follows: "Any person to whom a subsequent mortgage may have been executed, shall be entitled to the same privilege of redemption of the mortgaged premises, that the mortgagor might have had, or of satisfying the prior mortgage; and shall by such satisfaction acquire all the benefits to which said prior mortgagee was or might have been entitled."

In the absence of any statutory provision upon the subject of the payment of the surplus proceeds of sale, the mortgagee, upon making a sale under a power contained in the mortgage, would hold such surplus in his hands as trustee of him to whom the equity of redemption would have belonged.   2 *Wash. on Real Property*, (*3rd edition*) *p* 75; *Varnum vs. Mesene*, 8 *Alten*, 158;   *Bartlett vs. Wentworth and others*, 6 *Allen*, 79.

I think our statute makes no difference in the disposition of the fund.

The surplus, by the terms of the statute, is not payable absolutely to the mortgagor, but to him, his legal representatives, *or assigns.* If, for a valuable consideration, the mortgagor has assigned his equity of redemption in the mortgaged premises, the surplus is due to the assignee of the equity of redemption, not to the mortgagor. Who then, in this case, is the owner of the equity of redemption, to which this surplus is due? The plaintiff was the holder of the second mortgage upon the premises. As the holder of such mortgage, Ayer, as against the first mortgagee, had an assignment of the mortgagor's equity of redemption, and as against the mortgagor himself, he had such an interest, that upon the discharge of the Piper mortgage, his became the first mortgage. 2 *Wash. on Real Prop.,* p. 110 ; *Comp. Stat., ch.* 75, *sec.* 18, *p.* 646. One of the rights of Ayer, as assignee of Crosby's right to redeem from the Piper mortgage, was that of receiving from the assignee of the Piper mortgage what should remain in his hands as the avails of the sale of the mortgaged premises under the power of sale, after deducting the amount required to pay the debt secured by his mortgage. *Buttrick vs. Wentworth,* 6 *Allen,* 79.

As the conversion of the land into money, did not, so far as the proceeds of the sale are concerned, affect his rights injuriously, he had a first specific lien upon the surplus proceeds of sale of the premises under the first mortgage.

The only right which the defendant Stewart has in these surplus proceeds of sale is that acquired by the conveyance of Crosby to him, which operates as an assignment of Crosby's equity of redemption. As this conveyance was made subsequent to the execution of the plaintiff's mortgage, it is subject to it, and to the plaintiff's rights thereunder, and as against the plaintiff, is clearly subject to his equity of redemption from the first mortgage, and his first specific

lien on the surplus proceeds of sale thereunder. This equity of redemption having been assigned by the mortgagor to the plaintiff, could not be embraced in the subsequent conveyance to Stewart, the defendant.

The plaintiff therefore was the assignee of the mortgagor's rights in the surplus proceeds of sale in this case, and as the amount of such surplus did not exceed the amount due on the plaintiff's mortgage, the defendant had no right thereto whatever. *Buttrick vs. Wentworth and others*, 6 *Allen*, 79. In this view of the case the money was wrongfully paid to the defendant, and if the plaintiff's rights were recognized at law, an action for money had and received to the plaintiff's use would lie against him without a demand first made.

But as the plaintiff's rights exist only in equity, the lien must be enforced in equity, not at law ; and it seems to me there is no more necessity for a demand in this proceeding to enforce his lien against the surplus money arising from the sale of the premises, than there would be in an action to enforce the lien upon the land by foreclosing the mortgage.

The only testimony given on the trial as to the amount of money received by Stewart from the sheriff was that of the defendant Stewart himself : " I received of Zenus Wise, the Deputy Sheriff, who sold the land, the surplus money.     *     *     I received about two hundred dollars." On his cross-examination he says : " It was just about two hundred dollars ; not much one way or the other from that. He paid me the surplus—what was left after paying Smith's mortgage." The witness evidently does not speak with certainty as to the amount of money paid, but he does say that the surplus after paying Smith's mortgage was paid to him.

And in the answer the defendant alleges that the Deputy Sheriff paid to him " All the moneys remaining after paying the said note [the Piper mortgage note] and costs of sale." The referee finds that there was due Smith on this note two hundred dollars and seven cents, and the costs it was agreed, were twenty-five dollars. The referee has allowed as the amount of this note all that could have been due upon it upon any construction of its terms. As the answer alleges the note and costs were paid, and it appears that the amount of these were two hundred and twent-yfive dollars and seven cents, it is a conclusion of fact that this was the amount paid, and as it appears that the balance of the sum bid was paid to Stewart, and that the balance amounted to $288.93, it is a conclusion of fact that the payment to Stewart amounted to that sum. The finding of the referee on this point, it seems to me, is correct.

The defendant, I think, is properly chargeable with interest on the amount of the surplus fund. If I am correct in the view I have taken of the matter, he was not entitled to demand or receive this money ; it was therefore wrongfully received by him. The amount was applicable to the plaintiff's mortgage, that is, the plaintiff was entitled to receive the same as assignee of the mortgagor's equity of redemption, and, as against the defendant, it should have been applied to the payment of his debt; the defendant, with notice of the plaintiff's lien, demanded and received the money—withholding it from the plaintiff—for his own use. Under these circumstances there is no principle, I think, which requires a demand to be made before charging the defendant with interest, which is the measure of defendant's liability for the use of the funds to which the plaintiff was entitled.

But as the plaintiff is not entitled to receive interest on

the whole amount of his debt, and on the amount of the surplus money applicable to the payment of the debt during the same time, the amount accruing to the plaintiff from the latter fund, should go to the benefit of the mortgagor, and be deducted from the amount of the interest on the plaintiff's debt, which accrued during the same period.

The cause of action, in my opinion, is not barred by the statute of limitations. The action is based upon the right of the plaintiff, in equity, as second mortgagee, to a specific lien under his mortgage upon the surplus proceeds of the sale of the mortgaged premises after satisfying a prior mortgage, and is brought to declare and enforce the lien by a decree in equity, requiring the defendant to apply this fund to the payment of the debt secured by the mortgage. It is not an action for money had and received by the defendant to the plaintiff's use ; nor is it an action at law at all. The rights of the plaintiff, in respect to this fund are purely equitable in their nature, and such as are exclusively within the jurisdiction of a court of chancery. There is no express or implied contract, promise, or obligation of a legal character, as distinguished from an equitable one, on the part of the defendant. The cause of action is not within the limitation of six years prescribed by *Genl. Stats.*, *ch.* 66, *sec.* 6, *p.* 451. By *sec.* 11, *of Tit.* 2, *chap.* 66, *of the Genl. Statutes*, the time prescribed for commencing an action to foreclose a mortgage upon real estate, is twenty years after the cause of action accrues. If as a court of equity, we are to seek by analogy for a limitation to apply to this case, it seems to me upon the facts, as they appear in this case, we find it in that just cited, and applicable to the plaintiff's cause of action for the foreclosure of his mortgage. As the defendant cannot be affected by any finding or determination of this case, and the question of interest upon

the amount of the plaintiff's debt cannot affect the result as to the defendant in this action, it forms no ground of objection to the finding of the referee. I think the report of the referee was correct, and that the order setting aside the report of the referee, and directing a new trial, should be reversed.